## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| **JASON LEVITT**<br>1812 S. QUINCY STREET<br>ARLINGTON, VIRGINIA 22204<br><br>**and**<br><br>**FULL SPECTRUM POWER LLC,**<br>1069 W. BROAD STREET SUITE 791<br>FALLS CHURCH, VIRGINIA 22046<br><br>**Plaintiffs,**<br><br>v.<br><br>**JOSHUA KAUFFMAN**<br>3220 ESTRADA ROAD<br>MESILLA, NEW MEXICO 88046<br><br>**and**<br><br>**NAVITUS GROUP, LLC,**<br>3220 ESTRADA ROAD<br>MESILLA, NEW MEXICO 88046<br><br>**Defendants**. | **Civil Action No. 1:10-cv-296**<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiffs Jason Levitt ("Levitt") and Full Spectrum Power LLC ("Full Spectrum") (collectively "Plaintiffs") for their Complaint against Defendants Joshua Kauffman ("Kauffman") and Navitus Group, LLC ("Navitus") (collectively "Defendants"), respectfully state as follows:

## Parties

1.     Plaintiff Levitt is an individual living in the Commonwealth of Virginia.  Plaintiff Full Spectrum Power is a limited liability corporation organized and existing under the laws of Virginia.

2.     Defendant Kauffman is an individual living in the state of New Mexico. Defendant Navitus is a limited liability corporation organized and existing under the laws of New Mexico.

## Jurisdiction and Venue

3.     This complaint includes actions for trademark infringement, unfair competition, and trade libel and product disparagement under the Lanham Act, 15 U.S.C. § 1051 et seq.   This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

4.     This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statute and the common law of the Commonwealth of Virginia pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

5.     Additionally, this Court has jurisdiction over this matter based upon 28 U.S.C. § 1332(a), in that diversity of citizenship exists between Plaintiffs and Defendants and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

6.     This Court has personal jurisdiction over Defendants pursuant to 15 U.S.C. §1121(a) and 28 U.S.C. §§1331 and 1338.  On information and belief, Defendants have wrongfully used Plaintiff Levitt's SPEEDCELL mark and logo (for which there is a

pending application for registration with the United States Patent and Trademark Office) in this judicial district, have committed unfair competition in this district, and have issued defamatory statements in this district.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, on information and belief, a substantial portion of the events giving rise to this action occurred in this judicial district.  Defendants have wrongfully used and infringed, and continue to wrongfully use and infringe, Levitt's valuable mark in this judicial district, Defendants have committed unfair competition in this judicial district, and, further, Defendants have committed acts of defamation in this judicial district.

## Facts Common to All Counts

### Development of the SPEEDCELL Line

8.      Levitt spent years racing high performance motorcycles.   As part of his participation in the motorcycle racing industry, Levitt made improvements to the motorcycles that he raced.

9.      In 2007, Kauffman contacted Levitt regarding one of the motorcycles Levitt rode, and Levitt agreed to give Kauffman advice regarding his personal motorcycles.

10.      In 2008, Levitt and Kauffman began discussing ideas they had for developing additional improvements to racing motorcycles.

11.      Levitt tested the products, manufactured by Kauffman, on his personal motorcycles and provided reviews and technical expertise to Kauffman in order to improve the design.   Following extensive testing and review by Levitt, Levitt and Kauffman developed the products that would make up the SPEEDCELL line of batteries.

12.     Levitt suggested to Kauffman that they begin manufacturing, marketing, and selling a battery that had been developed based on Levitt's review and testing within the motorcycle racing industry, and Kauffman agreed.

13.     Levitt and Kauffman agreed that Levitt would distribute the product, advertise the product, pursue and enter into sales agreements, respond to customer inquiries and otherwise perform all functions associated with customer interaction, distribution and market development.  Kauffman would manufacture the batteries for Levitt to distribute.

14.     Profits and losses from manufacturing and selling the batteries were shared by Levitt and Kauffman.

15.     Levitt and Kauffman agreed that they would both have a role in manufacturing and selling the batteries.

16.     Levitt suggested to Kauffman that a trademark be developed to use in conjunction with the product.  Levitt suggested several possible alternative names for the product line and commissioned a focus group in Virginia to provide reactions to the alternative names. The focus group reacted most positively to the name "speedcell" and the parties agreed that Levitt would market the line under that name.

17.     Levitt commissioned a graphic artist to create the artwork for the SPEEDCELL mark and associated S logo.   Kauffman had no involvement in the creation of the SPEEDCELL mark.

18.     Levitt provided the SPEEDCELL mark and logo, as designed by the artist Levitt commissioned, to Kauffman for the sole purpose of affixing the mark to the product during the manufacturing process for Levitt to sell in the marketplace.

19.      Levitt had full responsibility for marketing and selling the SPEEDCELL line of batteries.  In this role, he was the public face of the SPEEDCELL brand, and customers associated the SPEEDCELL brand with Levitt.  At his own expense, Levitt conducted extensive advertising and marketing of the SPEEDCELL line nationally, and interacted frequently with customers and potential customers on national forums.

20.      Upon information and belief, the first batteries sold with the SPEEDCELL mark and associated S logo were sold by Levitt no later than January 2009.

21.      Levitt incorporated Full Spectrum in 2009 to market and sell the SPEEDCELL line and other products developed by Levitt.  Upon information and belief, Kauffman subsequently incorporated Navitus to manufacture the SPEEDCELL line for marketing and sale by Levitt and Full Spectrum.

22.      While manufacturing batteries to be sold by Levitt, Kauffman and Navitus frequently failed to meet orders and provide product Kauffman had promised to Levitt. Levitt frequently interfaced with customers whose orders were not filled on time because of Defendants' failure to meet promised production levels, and it was Levitt who convinced these individuals to remain customers despite orders not meeting deadlines and delivery dates that had been previously approved by Defendants.

23.      In September 2009, following Defendants' failure to produce batteries as agreed for customers, Levitt told Kauffman that they could no longer continue to do business in this manner and that Kauffman's lack of responsiveness was destroying the good will Levitt had created in the SPEEDCELL brand.  During that conversation, Kauffman stated that due to lack of funds, other business opportunities in Canada, problems with

component availability, and a lack of manufacturing capacity, Defendants would no longer be manufacturing batteries and Levitt should plan to work without them.

24.     Kauffman's announcement that he would no longer manufacture batteries rendered Levitt and Kauffman's purpose of manufacturing and selling batteries impractical.

25.     Levitt understood Kauffman's actions and statements as a withdrawal from the battery business, a relinquishment of any interest in the business they had been pursuing, and an abandonment of any possible claim Defendants may have had to the SPEEDCELL mark.

26.     Since September 2009, Levitt and Full Spectrum have continued to market and distribute batteries displaying the SPEEDCELL mark and logo.  The safety of those products has been repeatedly proven at the highest levels of competitive racing, and no safety related incident has ever been brought to the attention of either Levitt or Full Spectrum by any customer or user.

27.     Neither Kauffman nor Navitus has ever requested or otherwise sought Levitt's consent, authorization, or a license, to use the SPEEDCELL mark and logo independently for their own purposes, nor has either Levitt or Full Spectrum given permission or assented to the use of the SPEEDCELL mark, logo, or trade name to either Kauffman or Navitus.

28.     Upon information and belief, Kauffman and Navitus are currently manufacturing and selling batteries displaying the SPEEDCELL mark and logo, despite having no permission to use the SPEEDCELL mark and logo for their own purposes.

29.     Upon information and belief, Kauffman and Navitus have sold batteries displaying the SPEEDCELL mark and logo within the Commonwealth of Virginia.

30.     The batteries being marketed and sold by Plaintiffs and Defendants are comparable products and both are targeted to customers within the motorcycle racing industry.

<u>Levitt's Pending Registration of the Mark and Logo</u>

31.     Levitt filed an application for trademark of the SPEEDCELL mark and logo with the U.S. Patent and Trademark Office on 14 September 2009.

32.     On 16 December 2009, Levitt was notified by the U.S. Patent and Trademark Office that the assigned examining attorney had found no registered or pending conflicting marks that would bar his registration of the SPEEDCELL mark and logo under the Trademark Act.

<u>Navitus's Attempt to File for Registration</u>

33.     Navitus filed an application for trademark with the U.S. Patent and Trademark Office on 30 October 2009.  As part of that application, Navitus included photographs of two different marks, one of which was the SPEEDCELL mark with associated S logo developed by and belonging to Levitt.

34.     On 4 February 2010, the U.S. Patent and Trademark Office sent a letter of suspension in response to Navitus's trademark application alerting Navitus that its application had been suspended because an application for registration of the mark and logo had already been filed by Levitt.

35.     After Navitus's application was suspended, Kauffman contacted Levitt and complained that Levitt had filed to register the SPEEDCELL mark and logo.  Levitt was

shocked by this complaint, given Kauffman's unequivocal statement in September 2009 that Defendants would no longer manufacture batteries and that Levitt should work without them.

Defendants' Defamatory and Libelous Activity

36.     Upon information and belief, on 5 March 2010, Defendants posted a document he titled "Public Announcement – Warning", also labeled a press release ("Press Release"), in various places on the internet, including on their own website and in the forums of several industry websites.  The Press Release states:

PUBLIC ANNOUNCEMENT – Warning

Please be aware that a certain individual by the name of Jason Levitt d/b/a Full Spectrum Power has been using the trademark SPEEDCELL and associated logo S design.  These marks are owned exclusively by NAVITUS GROUP, LLC.  At a prior time Mr. Levitt was distributing batteries made by NAVITUS GROUP but their association was ended on October 21st, 2009.  Mr. Levitt is now distributing a battery of unknown origin which has been examined by some battery experts and is believed to pose possible risks to those using the misbranded batteries due to at least some of the imitation batteries having solder covering the safety disc / OPRV or other aspects of manufacture of the imitation batteries.

NAVITUS GROUP is concerned not only about the confusion and infringement of their exclusive trademark rights, but also the apparent danger which may be posed by at least some of the imitations sold by Jason Levitt and Full Spectrum Power under the exclusive trademarks of NAVITUS GROUP.  Although Mr. Levitt has claimed rights in the marks SPEEDCELL with the S design logo through an improper filing in the U.S. Patent and Trademark Office, such marks are the sole proprietary rights of NAVITUS GROUP.   All those interested in purchasing SPEEDCELL brand batteries need to be aware of the confusion being created in the marketplace by Mr. Levitt and Full Spectrum Power and contact NAVITUS GROUP LLC for a list of authorized distributors, retailers, or other sources for the legitimate SPEEDCELL brand batteries.

Contact Navitus Group at:<br>
Josh Kauffman<br>
512.743.9522<br>
josh@navitusgroup.com<br>
josh@speedcell.us

37.     The forums on which Defendants posted the Press Release are interactive forums accessible by the public.  The information provided by others posting to these forums indicate that at least some of the individuals accessing the forums are located within the Commonwealth of Virginia.

38.     Upon information and belief, since 5 March 2010, Defendants have posted the Press Release on at least one other forum.

39.     Upon information and belief, at least one of the forums on which Defendants have posted the Press Release is hosted on a server physically located within the Commonwealth of Virginia.

40.     Defendants have offered no evidence or support of the Press Release, nor has he released the names of the "battery experts" they claim examined Levitt's product.

**COUNT I**
**Trade Libel And Product Disparagement Under Section 43(A)**
**of The Lanham Act (15 U.S.C. §1125(A)(1)(B))**

41.     Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

42.     The Press Release published by Defendants contains numerous statements that are false, disparaging, and defamatory, including that:

     a.     the SPEEDCELL mark and associated logo S design are owned exclusively by, and are exclusive trademarks of, Navitus;

     b.     Mr. Levitt is distributing a battery of unknown origin;

     c.     the batteries distributed by Mr. Levitt are "believed" to pose "possible" risks to users;

     d.     Mr. Levitt is distributing "imitation" batteries;

    e.  Mr. Levitt submitted an improper filing to the U.S. Patent and Trademark Office;

    f.  Navitus has sole proprietary rights to the SPEEDCELL mark and S logo; and

    g.  that customers may contact Kauffman in order to purchase SPEEDCELL batteries.

43.    Each of the above statements is false.

44.    As discussed above, neither Kauffman nor Navitus has any rights to the SPEEDCELL mark or the S logo, much less exclusive rights.  Accordingly, Levitt is not distributing "imitation" batteries, rather, as described at length above, it is Kauffman and Navitus that are improperly distributing batteries displaying the SPEEDCELL mark and logo, and Defendants have no rights to distribute or otherwise sell batteries displaying the SPEEDCELL mark and logo.

45.    Levitt is currently distributing batteries manufactured by Full Spectrum.  He is not distributing batteries of unknown origin.

46.    The safety of Full Spectrum products has been repeatedly proven at the highest levels of competitive racing.  No safety related incident has ever been brought to the attention of either Levitt or Full Spectrum.  Neither Kauffman nor Navitus has provided any evidence of the unsubstantiated claims contained in the Press Release, and both Levitt and Full Spectrum stand behind the safety of all of their products and deny any allegation that they are unsafe.  While Defendants' statement is insidiously couched in qualified terms, it is clear that he is unjustifiably questioning the safety of the products manufactured and sold by Levitt and Full Spectrum and deliberately creating the impression that the batteries are of poor quality and are actually dangerous to the public at large and the target market for both Plaintiffs' and Defendants' competing products.

47.     Defendants were at fault in publishing the false and defamatory statements in the Press Release with knowledge that they were false or in reckless disregard for their truth or falsity.

48.     Upon information and belief, these statements, which Defendants knew to be false, were made to discredit the quality and safety of Plaintiffs' products.

49.     Defendants intended to injure Levitt in his business and to damage the reputation and goodwill of Levitt and Full Spectrum.  The messages published by Defendants have damaged, and will continue to damage, Plaintiffs in their relationship with their customers and in the industry.

50.     Defendants' aforesaid actions and misrepresentations constitute commercial speech.

51.     Defendants' aforesaid actions and misrepresentations were commenced by Defendants while Defendants' were in direct commercial competition with Plaintiffs.

52.     Upon information and belief, Defendants' actions and misrepresentations were committed with the knowledge and intent of influencing potential consumers to buy Defendants' batteries designed for the motorcycle racing industry.

53.     Defendants' aforesaid actions and misrepresentations were disseminated sufficiently to the relevant purchasing public so as to constitute advertising and/or promotion within the motorcycle racing industry.

54.     By virtue of Defendants' actions and misrepresentations hereinabove described, Defendants have committed and are continuing to commit acts of trade libel and product disparagement in violation of, *inter alia*, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

55.     Defendants' aforesaid acts of trade libel and product disparagement have caused and will continue to cause damage and irreparable harm to Plaintiffs, and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiffs and to the valuable goodwill symbolized by and associated with their distinctive and valuable SPEEDCELL  mark and logo, and lost sales and profits that Plaintiffs would have made but for the acts of Defendants, unless enjoined and restrained by the Court.

56.     Plaintiffs have no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to continue to wrongfully use Plaintiffs' SPEEDCELL mark, logo, and/or any confusingly similar variations thereof.

**COUNT II**
**(False Designation of Origin and Unfair Competition Under Section 43(a)**
**of the Lanham Act (15 U.S.C. § 1125(a)))**

57.     Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

58.     Defendants' unlicensed, unconsented to, and otherwise unauthorized use of Plaintiffs' mark, logo, and/or confusingly similar variations thereof, on or in connection with their advertising, marketing, and promotion of their services and/or goods, constitutes a false designation of origin that wrongly suggests to the relevant purchasing public and consumers that such services and/or goods emanate from, or are licensed, endorsed, approved, or sponsored by, or are in some other way associated or connected with the Plaintiffs and/or their SPEEDCELL mark and logo.

59.     Defendants' unlicensed, unconsented to, and otherwise unauthorized use of Plaintiffs' SPEEDCELL mark and logo and/or confusingly similar variations thereof, on and in connection with their advertising, marketing, and promotion of their services

and/or goods, constitutes a false description or representation tending to suggest to the relevant purchasing public that the Plaintiffs are the source of origin of such services and/or goods.

60.     Defendants' unlicensed, unconsented to, and otherwise unauthorized use of Plaintiffs' SPEEDCELL mark, logo, and/or confusingly similar variations thereof, has caused and/or is likely to continue to cause the trade, consumers, and the relevant purchasing public to be confused and mistaken as to the source of origin of the services and/or goods being offered and provided by Defendants and, further, to deceive the trade, consumers, and the relevant purchasing public as to whether the Plaintiffs are affiliated with, connected with, associated with, and/or a sponsor of Defendants' use of the distinctive, well-known and valuable SPEEDCELL mark, logo, and/or confusingly similar variations thereof on or in connection with such services and/or goods.

61.     By virtue of Defendants' acts hereinabove described, Defendants have committed, and are continuing to commit, acts of unfair competition and false designation of origin in violation of, *inter alia*, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.     Defendants' aforesaid acts of unfair competition and false designation of origin have caused and will continue to cause damage and irreparable harm to Plaintiffs, and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiffs and to the valuable goodwill symbolized by and associated with its distinctive and valuable SPEEDCELL mark and logo, unless enjoined and restrained by the Court.

63.     Plaintiffs have no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to continue to wrongfully use Plaintiffs' SPEEDCELL mark, logo, and/or any confusingly similar variations thereof.

**COUNT III**
**(Trademark Infringement Under Section 32 of the Lanham Act**
**(15 U.S.C. §1114(1)))**

64.     Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

65.     Plaintiff Levitt is the current owner of all right, title, and interest in and to the SPEEDCELL mark, logo, trade name, and all goodwill appurtenant thereto.

66.     Defendants have advertised, marketed, provided, promoted, and/or sold goods using Plaintiffs' distinctive, well-known and valuable SPEEDCELL mark, logo, and/or confusingly similar variations thereof, without license, consent, or other authorization from Plaintiffs.

67.     Defendants have never requested or otherwise sought Plaintiffs' consent, authorization, or a license, to use Plaintiffs' SPEEDCELL mark, logo, and/or any confusingly similar variations thereof for Defendants' own purposes.

68.     Plaintiffs never licensed, consented to, or otherwise authorized Defendants to use their distinctive, valuable and well-known SPEEDCELL mark, logo, and/or confusingly similar variations thereof for Defendants' own purposes.

69.     Without license, consent, or other authorization, Defendants adopted, began using, marketing, advertising, promoting, and selling their goods using Plaintiffs' distinctive, valuable and well-known SPEEDCELL mark, logo, and/or confusingly similar variations thereof for Defendants' own purposes.

70.     The goods that Defendants are marketing, advertising, promoting, and selling under or in connection with Plaintiffs' distinctive, valuable and well-known SPEEDCELL mark, logo, and/or confusingly similar variations thereof, are marketed,

advertised, and promoted to, and available in, the same channels of commerce and trade as the goods marketed, advertised, promoted, and provided by Plaintiffs.

71.     The goods marketed, advertised, promoted, and sold by Defendants are the same as, similar to, and/or competitive with, the goods marketed, advertised, promoted, and sold by Plaintiffs under and/or in connection with their valuable SPEEDCELL mark and logo.

72.     Upon information and belief, Defendants adopted, used, and continue to use Plaintiffs' distinctive, valuable and well-known SPEEDCELL mark and logo in an unlicensed, unconsented to, and otherwise unauthorized manner for the purpose of benefiting from and trading upon the goodwill enjoyed by Plaintiffs from their SPEEDCELL mark and logo.

73.     Defendants' actions and wrongful use of SPEEDCELL and/or confusingly similar variations thereof, has caused and will continue to cause the trade, consumers, and the relevant purchasing public to be confused and to erroneously believe that Defendants are either licensed by Plaintiffs to use SPEEDCELL and/or that Defendants and/or their respective goods are otherwise associated with SPEEDCELL.  Plaintiffs' valuable business reputations are being damaged by, and the distinctive character and quality associated with Plaintiffs' SPEEDCELL mark and logo are being irreparably harmed by, Defendants' conduct.

74.     Upon information and belief, Defendants' actions have been committed with knowledge and intent to cause confusion, mistake, or deception.

75.     Defendants' actions constitute trademark infringement in violation of, *inter alia*, Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

76.     The aforesaid acts of trademark infringement have caused and will continue to cause damage and irreparable harm to Plaintiffs and are likely to continue unabated, causing further damage and irreparable harm to Plaintiff and the goodwill symbolized by and associated with its SPEEDCELL mark and logo, unless enjoined and restrained by this Court.

77.     Plaintiffs have no adequate remedy at law.

**COUNT IV**
**(Trademark Dilution Under Section 43(C) of the Lanham Act**
**(15 U.S.C. § 1125(C)))**

78.     Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

79.     As a result of the Plaintiffs' use and advertisement of the SPEEDCELL mark and logo on and in connection with advertising, marketing, promotion, offers for sale, and sale of motorcycle batteries, and the strong recognition and reputation of Plaintiffs' mark and logo among the trade, consumers and the relevant purchasing public, the SPEEDCELL mark and logo is distinctive and famous.

80.     Defendants' adoption, registration and use of the SPEEDCELL mark and logo on their products has diluted, and is continuing to dilute, the distinctive quality of the SPEEDCELL mark and logo by lessening the ability and capacity of the mark to identify and distinguish Plaintiffs as the sole source of origin of their batteries.

81.     Defendants' adoption, registration and use of the www.speedcell.org and www.speedcell.us domain names has and is continuing to dilute the distinctive quality of the SPEEDCELL mark and logo by lessening the extensive and valuable goodwill, quality, and honor that is associated with it.

82.    By virtue of Defendants' acts hereinabove described, Defendants have violated and continue to violate the provisions of, *inter alia*, the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

83.    Defendants' acts of dilution have caused and will continue to cause damage to Plaintiffs and to the goodwill symbolized by and associated with its distinctive, valuable, and well-known SPEEDCELL mark and logo in an amount that cannot be ascertained at this time.

84.    Defendants' acts have caused and will continue to cause great and irreparable harm to Plaintiffs and their SPEEDCELL mark and logo and, unless enjoined by this Court, will cause further substantial, immediate, and irreparable injury to Plaintiff.

85.    Plaintiffs have no adequate remedy at law and are entitled to injunctive relief against Defendants restraining further acts of trade dilution by Defendants, and damages.

**COUNT V**
**(Cybersquatting Under Section 43(d) of the Lanham Act (15 U.S.C. § 1125(d)))**

86.    Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

87.    Defendants' adoption, registration, and use of the www.speedcell.us and www.speedcell.org domain names violates the U.S. Anti-Cybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

88.    As described above, as a result of the Plaintiffs' use, advertisement, and sale of the SPEEDCELL product, the SPEEDCELL name is distinctive and famous.

89.    Defendants' www.speedcell.us and www.speedcell.org domain names are virtually identical and confusingly similar to Plaintiffs' distinctive SPEEDCELL mark and logo.

90.     Defendants' adoption, registration, and use of the www.speedcell.us and www.speedcell.org domain names is dilutive of Plaintiffs' SPEEDCELL mark and logo, harms the goodwill of Plaintiffs' mark, and tarnishes and disparages the mark.

91.     Defendants' acts of cybersquatting have caused damage and threaten to cause further damage to the Plaintiffs and their mark and logo in an amount that cannot be ascertained at this time.

92.     Defendants' acts have caused and will continue to cause great and irreparable harm to the Plaintiffs and their mark and logo and, unless enjoined by this Court, will cause further substantial, immediate and irreparable injury to Plaintiffs.

93.     Plaintiffs have no adequate remedy at law.

94.     By reason of the foregoing, the Plaintiffs are entitled to Defendants' forfeiture or cancellation of the www.speedcell.us and www.speedcell.org domain names or the transfer of the domain names to Plaintiffs, injunctive relief against Defendants restraining further acts of cybersquatting by Defendants, and damages.

**COUNT VI**
**(Statutory Mark Infringement under Virginia Law (Va. Code § 59.1-92.12))**

95.     Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

96.     Levitt was the first to use the SPEEDCELL mark and logo in the course of selling and advertising motorcycle batteries in the Commonwealth of Virginia.

97.     Plaintiffs continue to use their SPEEDCELL mark and logo in the course of selling and advertising the SPEEDCELL line of motorcycle batteries within the Commonwealth.

98.     As described above, Defendants have advertised, marketed, provided, promoted,

and/or sold goods using Plaintiffs' distinctive, well-known, and valuable SPEEDCELL mark, logo, and/or confusingly similar variations thereof, without license, consent, or other authorization from Plaintiffs.

99.    As described above, Defendants have never requested or otherwise sought Plaintiffs' consent, authorization, or a license, to use Plaintiffs' SPEEDCELL mark, logo, and/or any confusingly similar variations thereof for Defendants' own purposes, and Plaintiffs never licensed, consented to, or otherwise authorized Defendants to use its distinctive, valuable and well-known SPEEDCELL mark, logo, and/or confusingly similar variations thereof for Defendants' own purposes.

100.    The goods marketed, advertised, promoted, and sold by Defendants are the same as, similar to, and/or competitive with, the goods marketed, advertised, promoted, and sold by Plaintiffs under and/or in connection with their valuable SPEEDCELL mark and logo.

101.    Upon information and belief, Defendants adopted, used, and continue to use Plaintiffs' distinctive, valuable and well-known SPEEDCELL mark and logo in an unlicensed, unconsented to, and otherwise unauthorized manner for the purpose of benefiting from and trading upon the goodwill enjoyed by Plaintiffs from their SPEEDCELL mark and logo.

102.    Defendants actions and wrongful use of SPEEDCELL and/or confusingly similar variations thereof, has caused and will continue to cause the trade, consumers, and the relevant purchasing public to be confused,  mistaken, or deceived and to erroneously believe that Defendants are either licensed by Plaintiffs to use SPEEDCELL and/or that Defendants and/or their respective goods are otherwise associated with SPEEDCELL.

Plaintiffs' valuable business reputations are being damaged by, and the distinctive character and quality associated with Plaintiffs' SPEEDCELL mark are being irreparably harmed by, Defendants' conduct.

103.    Upon information and belief, Defendants' actions have been committed with knowledge and intent to cause confusion, mistake, or deception.

104.    Defendants' actions constitute trademark infringement in violation of, *inter alia*, of Virginia Code § 59.1-92.12.

105.    The aforesaid acts of trademark infringement have caused and will continue to cause damage and irreparable harm to Plaintiffs and are likely to continue unabated, causing further damage and irreparable harm to Plaintiff and the goodwill symbolized by and associated with its SPEEDCELL mark and logo, unless enjoined and restrained by this Court.

## COUNT VII
### (Common Law Product Disparagement)

106.    Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

107.    The Press Release published by Defendants contains numerous statements that are false, disparaging, and defamatory, including that:

    a.   the SPEEDCELL mark and associated logo S design are owned exclusively by, and are exclusive trademarks of, Navitus;

    b.   Mr. Levitt is distributing a battery of unknown origin;

    c.   the batteries distributed by Mr. Levitt are "believed" to pose "possible" risks to users;

    d.   Mr. Levitt is distributing "imitation" batteries;

20

    e.  Mr. Levitt submitted an improper filing to the U.S. Patent and Trademark Office;

    f.  Navitus has sole proprietary rights to the SPEEDCELL mark and S logo; and

    g.  that customers may contact Kauffman in order to purchase SPEEDCELL batteries.

108.    Each of the above statements is false.

109.    As discussed above, neither Kauffman nor Navitus has any rights to the SPEEDCELL mark or the S logo, much less exclusive rights.  Accordingly, Levitt is not distributing "imitation" batteries, rather, as described at length above, it is Kauffman and Navitus that are improperly distributing batteries displaying the SPEEDCELL mark and logo, and Defendants have no rights to distribute or otherwise sell batteries displaying the SPEEDCELL mark and logo.

110.    Levitt is currently distributing batteries manufactured by Full Spectrum.  He is not distributing batteries of unknown origin.

111.    The safety of Full Spectrum products has been repeatedly proven at the highest levels of competitive racing.  No safety related incident has ever been brought to the attention of either Levitt or Full Spectrum.  Neither Kauffman nor Navitus has provided any evidence of the unsubstantiated claims contained in the Press Release, and both Levitt and Full Spectrum stand behind the safety of all of their products and deny any allegation that they are unsafe.  While Defendants' statement is insidiously couched in qualified terms, it is clear that he is unjustifiably questioning the safety of the products manufactured and sold by Levitt and Full Spectrum and deliberately creating the impression that the batteries are of poor quality and are actually dangerous to the public at large and the target market for both Plaintiffs' and Defendants' competing products.

112.    Defendants were at fault in publishing the false and defamatory statements in the Press Release with knowledge that they were false or in reckless disregard for their truth or falsity.

113.    Upon information and belief, these statements, which Defendants knew to be false, were made to discredit the quality and safety of Plaintiffs' products.

114.    Defendants intended to injure Levitt in his business and to damage the reputation and goodwill of Levitt and Full Spectrum.  The messages published by Defendants have damaged, and will continue to damage, Plaintiffs in their relationship with their customers and in the industry.

115.    Defendants' conduct was willful, wanton, and deliberate, justifying an award of exemplary damages.

### COUNT VIII
### (Common Law Commercial Defamation)

116.    Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

117.    As described above, the Press Release published by Defendants contains numerous  false statements.

118.    Defendants were at fault in publishing the false and defamatory statements in the Press Release with knowledge that they were false or in reckless disregard for their truth or falsity.

119.    These statements, which Defendants knew to be false, are defamatory per se, and they have damaged Plaintiffs' reputations in the motorcycle racing industry, causing them significant injury.

120.    Defendants intended to injure Levitt in his business and to damage the reputation and goodwill of Levitt and Full Spectrum.  The messages published by Defendants have damaged, and will continue to damage, Plaintiffs in their relationship with their customers and in the industry.

121.    Defendants' conduct was willful, wanton, and deliberate, justifying an award of exemplary damages.

## COUNT IX
### (Intentional Interference with Prospective Economic Advantage)

122.    Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

123.    As described above, Levitt and Full Spectrum have been and are currently selling batteries to the motorcycle racing industry.

124.    Upon knowledge and belief, Defendants were aware that Levitt and Full Spectrum were selling batteries to the motorcycle racing industry and would continue to do so.

125.    Upon information and belief, Defendants intentionally published false and disparaging statements such that they were directed at Plaintiffs' clients and customers and others in the industry with whom Plaintiffs had both existing and prospective business relationships.

126.    Given that the forums to which Defendants posted the Press Release are frequently visited by members of the motorcycle racing industry, it is certain that the statements were seen by both current and prospective clients and customers of the Plaintiffs.

127.    Upon information and belief, Plaintiffs' clients and customers have read the Press Release, and at least some of those clients and customers, based solely on the language of the Press Release, have questioned Plaintiffs on the statement.

128.    Upon information and belief, Plaintiffs have lost sales that would have occurred but for the actions of Defendants.

129.    Defendants' actions, as described above were, intended to damage both Full Spectrum and Levitt in the sale of SPEEDCELL batteries and other products to the motorcycle racing industry.

130.    Plaintiffs' are entitled to recover damages from Defendants in an amount to be proven at trial.

**COUNT X**
**(Common Law Mark Infringement)**

131.    Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

132.    Plaintiffs have prior and exclusive rights to the use of the SPEEDCELL mark and logo to identify, market, promote, and sell their motorcycle batteries.

133.    Defendants have used, and continue to use, Plaintiffs' SPEEDCELL mark, logo, and/or confusingly similar variations thereof in connection with the advertising and selling of motorcycle batteries in such a manner as to create a likelihood of confusion among prospective purchasers, thereby leading purchasers and others to believe, contrary to fact, that the goods and services sold by Defendants are rendered, sponsored, or otherwise approved by, or created in connection with Plaintiffs, which acts of Defendant have damaged, impaired and diluted that part of Plaintiffs' goodwill symbolized by the SPEEDCELL mark and logo, causing immediate and irreparable damage to Plaintiffs.

24

134.   The nature,   probable tendency and effect of Defendants' use of Plaintiffs' SPEEDCELL mark, logo,  and/or confusingly similar variations thereof, in the manner alleged is to enable Defendants to deceive the public by passing off its goods and services a being rendered, sponsored, or otherwise approved by or connected with Plaintiffs.

135.   Defendants' use of Plaintiffs' SPEEDCELL mark, logo, and/or confusingly similar variations thereof, in connection with the advertising and selling of electronic advertising services, is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods or services and constitutes infringement of Plaintiffs' SPEEDCELL mark and logo under the common law of the Commonwealth of Virginia.

136.   Defendants' use of Plaintiffs' SPEEDCELL mark, logo, and/or confusingly similar variations thereof, has caused and/or is likely to continue to cause the trade, consumers, and the relevant purchasing public to be confused and mistaken as to the source of origin of the services and/or goods being offered and provided by Defendants and, further, to deceive the trade, consumers, and the relevant purchasing public as to whether the Plaintiffs are affiliated with, connected with, associated with, and/or sponsors of Defendants' use of the distinctive, well-known and valuable SPEEDCELL mark, logo, and/or confusingly similar variations thereof on or in connection with such services and/or goods.

137.   Defendants' acts have caused and will continue to cause great and irreparable harm to Plaintiffs and their SPEEDCELL mark and logo and, unless enjoined by this Court, will cause further substantial, immediate, and irreparable injury to Plaintiff.

138.   Plaintiffs have no adequate remedy at law and are entitled to injunctive relief against Defendants restraining further acts of infringement by Defendants, and damages.

25

## COUNT XI
### (Common Law Unfair Competition)

139.     Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

140.     Defendants have used, and continue to use, the SPEEDCELL mark and logo without permission or authority.

141.     Upon information and belief, Defendants have sold, and continue to sell, products displaying the SPEEDCELL mark and logo into the Commonwealth of Virginia.

142.     Defendants' unauthorized use, adoption, appropriation, and/or copying of the SPEEDCELL mark and logo constitutes unfair competition in violation of the common law of the Commonwealth of Virginia.

143.     Defendants' actions have damaged Plaintiffs and their business.

144.     Plaintiffs are entitled to recover damages from Defendants in an amount to be proved at trial.

145.     Unless temporarily, preliminarily, and permanently enjoined, Defendants will continue to cause irreparable harm for which there exists no adequate remedy at law.

## COUNT XII
### (Declaratory Judgment on Ownership of the Mark)

146.     Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

147.     This claim arises from an actual and justifiable controversy between Plaintiffs and Defendants as to infringement of the SPEEDCELL mark and associated S logo.

148.     As described at length above, Plaintiffs are the rightful owners and users of the SPEEDCELL mark and associated S logo.

149.    Upon information and belief, there is a likelihood that Defendants' continued use of the SPEEDCELL mark and associated S logo and/or confusingly similar variations thereof, has caused and/or is likely to continue to cause the trade, consumers, and the relevant purchasing public to be confused and mistaken as to the source or origin of Defendants' goods or services.

150.    A judicial determination of Plaintiff Levitt's ownership of the SPEEDCELL mark and the associated S logo is necessary and appropriate at this time.

151.    Plaintiffs therefore ask that the Court enter a declaratory judgment declaring that Plaintiff Levitt is the rightful owner of the SPEEDCELL mark and associated S logo.

## COUNT XIII
### (Declaratory Judgment on Infringement of the Mark)

152.    Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth and restated herein.

153.    This claim arises from an actual and justifiable controversy between Plaintiffs and Defendants as to infringement of the SPEEDCELL mark and associated S logo.

154.    Defendants have expressly accused Plaintiffs of infringing on their alleged SPEEDCELL and associated logo S design.  These claims are entirely without merit and Plaintiffs are not now and never have committed any act of trademark infringement in violation of Defendants' rights.

155.    As described at length above, Plaintiffs are the rightful owners and users of the SPEEDCELL mark and associated S logo.

156.    A judicial determination of Plaintiffs' non-infringement on Defendants' rights is necessary and appropriate at this time.

157.    Plaintiffs therefore respectfully request that the Court enter a judgment declaring (1) that Plaintiffs are the rightful owners and users of the SPEEDCELL mark and associated S logo; and (2) that Plaintiffs' use of the SPEEDCELL mark and associated S logo does not infringe upon, or otherwise misappropriate or cause damage to, Defendants' rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants as follows:

(1)     That the Court issue an order declaring that Plaintiffs are the rightful owners and users of the SPEEDCELL mark and associated S logo;

(2)     That the Court issue an order declaring that Plaintiffs' use of the SPEEDCELL mark and associated S logo does not infringe upon, or otherwise misappropriate or cause damage to, Defendants' rights;

(3)     That the Court order Defendants to immediately publish a retraction of the Press Release disavowing all false statements made within and definitively stating that there is no evidence of any safety concerns regarding products manufactured or distributed by Levitt or Full Spectrum and further stating that neither Kauffman nor Navitus have any rights to the SPEEDCELL mark or S logo.  This retraction will be provided to Defendants by Plaintiffs, and it must be posted to all websites to which the Press Release was posted or discussed;

(4)     That the Court preliminarily and permanently enjoin Defendants and/or their respective employees, partners, officers, directors, agents, representatives, attorneys,

successors, and assigns, and all persons in active concert or participation with any of them, from doing business as SPEEDCELL, and/or from otherwise using the SPEEDCELL mark, logo, and/or any confusingly similar variations thereof, in any manner or form, or any other reproduction, counterfeit, copy, or colorable imitation of such mark, either alone or in combination with any other designation, and from otherwise competing unfairly with Plaintiffs;

(5)     That the Court order Defendants to dismantle, take down, or otherwise cease operation of any website having the domain names www.speedcell.org or www.speedcell.us, and/or any similar variations thereof;

(6)     That the Court order Defendants to immediately transfer the domain names www.speedcell.org and www.speedcell.us, and/or any similar variations thereof, to Plaintiffs;

(7)     That the Court order Defendants to take down, remove, destroy and/or obliterate any and all, labels, signs, brochures, advertisements and other items in its possession, or under its control, upon which appear or reflect the SPEEDCELL mark, logo, and/or any confusingly similar variations thereof, in any manner or form, or any other reproduction, counterfeit, copy, or colorable imitation of the SPEEDCELL mark and logo, either alone or in combination with any designation;

(8)     That the Court order Defendants to pay to Plaintiffs Compensatory damages in an amount to be determined at trial:

(9)     That the Court order Defendants to account for and pay to Plaintiffs all profits realized by Defendants from their infringement of or upon Plaintiffs'

SPEEDCELL mark and logo, their false designations of origin, their false and misleading advertising and promotion, their misrepresentations, and their acts of unfair competition;

(10)    That the Court order Defendants to pay Plaintiffs their costs and expenses incurred in and related to this action;

(11)    That the Court order Defendants to pay Plaintiffs their attorneys' fees;

(12)    That the Court award Plaintiffs exemplary damages in the full amount permitted by law; and

(13)    That the Court award such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

Jason Levitt and Full Spectrum Power LLC

By Counsel

BRYAN CAVE LLP
1155 F Street, N.W., Suite 700
Washington, D.C.  20004
 (202) 508-6044 (voice)
 (202) 508-6200 (facsimile)
jennifer.kies@bryancave.com


By: _____ _____/S/_____
        Jennifer M. Kies (Virginia Bar No. 73102)

Dated:  March 29, 2010


Of Counsel:

Alec W. Farr
BRYAN CAVE LLP
1155 F Street, N.W., Suite 700
Washington, D.C.  20004
(202) 508-6053 (voice)
(202) 508-6200 (facsimile
awfarr@bryancave.com