**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| _____ ) | |
| JASON LEVITT, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case no. 1:10cv296 (AJT/IDD) |
| ) | |
| JOSHUA KAUFFMAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO COMPEL

Defendants Joshua Kauffman and Navitus LLC ("Defendants"), by counsel, file this supplemental memorandum in support of their previously-filed[1] Motion to Compel full and complete discovery responses from Plaintiffs Jason Levitt and Full Spectrum Power LLC ("Plaintiffs") and state as follows:

## FACTUAL BACKGROUND

Defendants file this supplemental memorandum in an attempt to narrow the issues with respect to Plaintiffs' incomplete discovery responses. As this Court will recall, this action involves the brazen acts by a former part-time East Coast battery distributor to usurp a motorcycle battery business that the owner and manufacturer Defendants have developed over

---

[1] Defendants originally filed their Motion to Compel on July 23, 2010. At oral argument on July 30, 2010, this Court ordered Plaintiffs to supplement their responses on or before August 3, 2010. A follow-up hearing scheduled for August 5, 2010 was postponed because Defendants had not received a timely supplementation from Plaintiffs in time to assess the completeness of the production. Shortly thereafter, before a follow-up hearing could be scheduled, Plaintiffs' counsel notified defense counsel that he was withdrawing and that his client had ceased all communications with him. This again prevented Defendants from re-noticing this Motion until September 1, 2010, a date set by the Court at the Motion to Withdraw hearing on August 20, 2010.

many years.  Plaintiffs concede that they put no capital into the business, and Plaintiffs can produce no agreement that Defendants somehow turned over this business *for free*.  Plaintiffs aggressive tactics culminated in the filing of this action in their home state of Virginia, seeking to disadvantage the New Mexico-based Defendants.  Defendants responded with a Counterclaim to put an end to Plaintiffs' reckless and troubling behavior, and served comprehensive discovery on Plaintiffs to understand, among other things, the basis for Plaintiffs' allegations and the extent to which Defendants have been damaged by Plaintiffs' reckless and troubling behavior.  Defendants' Interrogatories and Document Requests (served by hand on June 19, 2010) are attached to the original Motion to Compel as Exhibits "A" and "B."

Pursuant to Local Rules, Plaintiffs' written objections were due on or before July 6, 2010 (July 5 being a Federal holiday and a Monday), but no objections were served.  Even though Plaintiffs' second law firm entered an appearance on July 7, 2010, at no time after July 6, 2010 did Plaintiffs' counsel seek leave to file tardy objections.  On Monday, July 19, 2010, at 10:40 p.m., Plaintiffs' counsel forwarded *objections* and responses to the discovery requests.  *See* Exhibit "C" to the original Motion to Compel.  At the time the objections were lodged (long after the objections were due), no motion for leave to file tardy objections was filed.  In fact, to this day, no motion for leave to file tardy objections has been presented or granted.

Moreover, no documents were produced along with the responses on July 19, 2010.  Plaintiffs finally supplemented their responses and produced materials during the week of August 5, 2010.  A copy of the Supplemental Responses are attached hereto as Exhibits "1" and "2."  Only 149 documents have been produced, and many communications between the parties that Defendants know to exist have not been produced by Plaintiffs.  Defendants therefore question whether Plaintiffs have diligently preserved, searched for, and produced responsive

documents in this matter.  Defendants are also not satisfied with a number of the supplemental responses.

Therefore Defendants re-noticed this Motion to the Court to overrule the remaining objections, to ensure full and complete responses, and to compel the production of the requested materials.  For the reasons set forth below, Defendants' Motion should be granted, and Plaintiffs ordered to provide full and complete responses without objection, with Defendants' costs assessed against Plaintiffs.

## ARGUMENT

I.   **PLAINTIFFS' REMAINING LATE OBJECTIONS SHOULD BE OVERRULED AND THE PLAINTIFFS ORDERED TO PRODUCE FULL AND COMPLETE RESPONSES TO DEFENDANTS' INTERROGATORIES AND DOCUMENT REQUESTS.**

Although Plaintiffs have now supplemented their discovery responses and removed many of their tardy written objections, ten (10) blanket objections remain and should be overruled.  To date, no responses have been provided for Interrogatory Nos. 24 and 25 and Document Request Nos. 26-28 and 54-58.

As stated above, Defendants' Interrogatories and Document Requests were served by hand on June 19, 2010.  Pursuant to Local Rule 26(C), Plaintiffs' deadline for objecting fell on July 6, 2010.  Plaintiffs served no objections *and neither requested nor obtained an extension from this Court*.  Because these objections were not served until July 19, 2010, they were not served timely within fifteen (15) days of the service of the discovery requests.  Failure to assert such objections renders the objections waived.  Therefore, this Court should overrule all such objections, and order the Plaintiffs to respond to the requests with full and complete  responses.

Even if this Court declines to rule that the objections were waived for failure to comply with Local Rule 26(C), the objections (which fall into three categories) should still be overruled

3

as follows:

      A.    <u>Requests seeking employment information for Plaintiff Jason Levitt during specific years at issue in this case (2008-09) - Interrogatory No. 24 and Document Request No. 26.</u>

**Interrogatory No. 24** requests that Plaintiffs "Identify any and all jobs Jason Levitt held in 2008 and 2009 by name and address of employer, title, job description and responsibilities, immediate supervisor, the dates Mr. Levitt left such jobs, the reason(s) why Mr. Levitt left such jobs, and the Bates Numbers (from Plaintiffs' document production) of the documents referencing or reflecting such facts."  **Document Request No. 26** requests that Plaintiffs produce **"**Documents sufficient to reflect all jobs Jason Levitt held in 2008 and 2009 by name and address of employer, title, job description and responsibilities, immediate supervisor, the dates Mr. Levitt left such jobs, the reason(s) why Mr. Levitt left such jobs."

Although Plaintiffs contend that these requests seek "irrelevant information not reasonably calculated to lead to the discovery of admissible evidence,"[2] this information is critical because Plaintiffs contend that Jason Levitt was a "partner" in the Defendants' business during this period, and Defendants have the right to explore, among other things, what employment Plaintiff Jason Levitt actually engaged in, how much time he devoted to those other endeavors (versus the Defendants' business), what he represented to those other employers about his business activities, and to establish that Plaintiff Jason Levitt is not an expert in the development and manufacture of motorcycle batteries.  Mr. Levitt is alleging that he helped develop the batteries in this case, but Defendants will show that he did not work in the field and did not have that technical background.  The jury is entitled to know how Mr. Levitt was

---

[2]   To the extent that Plaintiffs also claim that this information seeks confidential information, defense counsel sent to Plaintiffs' counsel a proposed Protective Order (as requested by Plaintiffs) on July 30, 2010.  Defendants have never received any comments (or any response at all) from Plaintiffs, except that Plaintiffs did designate materials "Confidential" in their document production.

employed at a time when he was apparently designing and manufacturing counterfeit batteries and selling them to the public.

    B.    <u>Requests seeking income information for Plaintiff Jason Levitt for a critical seven (7) month period at issue in this case - Interrogatory No. 25 and Document Request Nos. 27 and 28.</u>

**Interrogatory No. 25** requests that the Plaintiffs "Identify the average monthly amount of income for Jason Levitt for the period six months before Mr. Levitt left his employment at Booz Allen Hamilton, and the actual monthly income for the first full month after Mr. Levitt left his employment at Booz Allen Hamilton." **Document Request No. 27** seeks "Documents sufficient to reflect the average monthly amount of income for Jason Levitt for the period six months before Mr. Levitt left his employment at Booz Allen Hamilton." **Document Request No. 28**: Documents sufficient to reflect the actual monthly income for the first full month after Mr. Levitt left his employment at Booz Allen Hamilton.

Although Plaintiffs again contend that the interrogatory "seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence,"[3] the Defendants' requests are narrowly tailored to a seven (7) month window of time, and the Defendants also do not object if the Plaintiffs designate the responsive materials as "Confidential" under a Protective Order in this case.  The income information is especially relevant (and certainly discoverable), as Defendants have alleged in the Counterclaim that Plaintiff Levitt had a financial motive to try to steal Defendants' business because he was getting fired from his position at Booz Allen Hamilton.  Defendants also believe that Plaintiffs were attempting to undercut the prices of another one of Defendants' distributors (to obtain a larger share of the market improperly) despite the express direction of Defendants.  The Counterclaim alleges as follows, and Defendants should be able to show the jury the extent of the desperation as a financial motive for

---

[3]  *See* Note 2 above.

the actions in this case:

96.     Several months later, Kauffman learned from Levitt that Levitt was about to get fired from his consulting job, and that Levitt would need to rely on the distribution of Kauffman's SPEEDCELL batteries as his primary source of income.

97.     As a result, Levitt asked Kauffman for large discounts on the cost of batteries that he promised to make up for in volume.  Levitt reiterated that this would be his only source of income until he could find another full-time job.

98.     Kauffman reluctantly agreed, and at first, Levitt's order count did not change dramatically.

99.     When Levitt started to place larger orders, Levitt did not pay his bills on time.

100.    Kauffman then learned that Levitt was trying to undercut prices of SPEEDCELL batteries to get a larger market share beyond the East Coast. This caused another of Kauffman's distributors (Motowheels) to complain that it was forced to cut prices to compete with another distributor.  Levitt was again causing problems for Kauffman.

101.    Kauffman told Levitt that he was not permitted as a distributor to undercut other distributor's prices.

102.    In August 2009, Levitt asked Kauffman for an even greater discount, and complained that Kauffman was charging Levitt too much for shipping. Kauffman explained to Levitt that SPEEDCELL only charged him the cost of shipping, and that Levitt received the largest discount already.

103.    Over time, Levitt seemed to become more desperate for money.

Counterclaim,  ¶¶ 96-103.   Had Defendants known the apparent scope of Plaintiff Levitt's

desperation for money, perhaps Defendants could have foreseen that Plaintiff Levitt would then

chart an aggressive course: (1) to undercut Defendant's other distributors to steal market share

against Defendants' wishes, and (2) at the same time obtain Defendants' batteries for as cheap as

possible (and not even pay for some), sell them at a higher profit, mingle those batteries with

counterfeit batteries using the "SPEEDCELL" name to steal customers from Defendants, secretly

register "SPEEDCELL" domain names, and secretly file a trademark application in an attempt to cut off Defendants' superior rights to the intellectual property.  Defendants believe that the loss of the Booz Allen Hamilton employment and its income was a catalyst to much of this behavior, and Defendants intend to use this as evidence at trial.

      C.    <u>Requests seeking information regarding Plaintiff Jason Levitt's termination from his employment at Booz Allen Hamilton at a critical juncture in this case - Document Request Nos. 54-58.</u>

**Document Request No. 54** seeks "All documents reflecting or mentioning the reason(s) provided by Booz Allen Hamilton for terminating your employment."  **Document Request No. 55** seeks "Documents sufficient to describe the complaints raised against you which preceded your departure from Booz Allen Hamilton."  **Document Request No. 56** seeks "Any written claims or charges by an individual suggesting that you engaged in inappropriate behavior while employed by Booz Allen Hamilton."  **Document Request No. 57** seeks "The termination letter provided to you by Booz Allen Hamilton."  **Document Request No. 58** seeks "All severance documents exchanged between you and Booz Allen Hamilton."

Although Plaintiffs objected to each of these document requests that "[t]his interrogatory *[sic]* seeks information that is irrelevant to the matter and is not reasonably calculated to lead to the discovery of admissible evidence," Defendants believe this material is critical to this case for the same reasons set forth above.  In addition, to the extent that Plaintiff Levitt was terminated from Booz Allen Hamilton for inappropriate behavior, this is discoverable information, even if it must be designated as Confidential under a Protective Order.  In this case, there is evidence that Plaintiff Levitt contacted a Booz Allen employee named Joseph Buckland to perform graphic artist services for Defendants.  Among other things, Defendants are entitled to explore whether Plaintiff Levitt was terminated for, among other things, using and abusing his co-workers at the

company, and whether he was counseled, disciplined, or terminated because of the side business

he was trying to run from my clients' battery technology or the contact with his colleague Mr.

Buckland who designed the logo at issue in this case.  The jury should be able to hear how Mr.

Levitt comports himself in a business setting, and whether there are problems with unscrupulous

or unprofessional behavior.  At the very least, this information is discoverable.

For the reasons set forth above, this Court should overrule Plaintiffs' objections and

compel full and complete answers to Interrogatory Nos. 24 and 25 and Document Request Nos.

26-28 and 54-58.


## II.   **PLAINTIFFS HAVE FAILED TO PRODUCE RESPONSIVE DOCUMENTS.**

Although Plaintiffs have responded that they will produce documents responsive to the

following requests, no such documents are included in their production of documents:

- **Document Request No. 10** (basis for contention that safety of Plaintiffs' batteries have been proven "at the highest levels of competitive racing")
- **Document Request No. 11** (reports and evaluations on Plaintiffs' batteries)
- **Document Request No. 29** (basis for and amount of damages claimed by Plaintiffs)
- **Document Request No. 33-38** (Plaintiffs' relationship with Orient Express)
- **Document Request No. 46** (vendors to whom Plaintiffs supplied batteries)
- **Document request No. 51** (Plaintiffs' business plans for the battery business since January 2009)
- **Document Request No. 64** (materials showing that Plaintiffs were the first to use the new SPEEDCELL logo)
- **Document Request No. 69** (Plaintiffs' marketing materials for Defendants' products since January 1, 2009); and
- **Document Request No. 70** (Plaintiffs' marketing materials for Plaintiffs' products since January 1, 2009).

Moreover, Plaintiffs have failed to produce sufficient documents in response to the

following requests:

- **Document Request No. 16** (the dates and amount of purchase of product from each vendor from whom Plaintiffs have purchased raw materials and parts since January 2009), but Plaintiffs merely produced four (4) random invoices from which it is clear Plaintiffs could not possibly have purchased all the materials

and parts required for the batteries they claim to have sold.

-   Also missing from Defendants' production of documents, and known to exist, are documents that show communications between Plaintiffs and customers of Defendants – **Document Request Nos. 19-24, 44-45, and 71**.

This Court should compel the production of these materials (*requested back in mid-June*), and they should be produced quickly in light of the impending discovery cut-off and upcoming depositions as early as mid-September.

## III.   PLAINTIFFS' RESPONSES TO A NUMBER OF SPECIFIC INTERROGATORIES ARE INCOMPLETE, INADEQUATE, AND CONCLUSORY.

In their supplemental answers to Interrogatories, Plaintiffs still provide only terse written answers to requests seeking information on critical subject areas in this case, namely:

- Interrogatory No. 7 seeks the facts and circumstances upon which the Plaintiffs base their contention in paragraph 11 of the Complaint that Levitt performed "extensive testing" and that Levitt somehow assisted in the development of the SPEEDCELL batteries.  The Interrogatory specifically asked how the products were developed as a result of such testing, what was incorporated into Defendants' batteries, and what documents exist to demonstrate these facts. While Plaintiffs state in conclusory fashion that they contributed the "opposing leads" option as well as the "QD option" there is no explanation of what this means and how and when it was incorporated.  Moreover, Plaintiffs state that these items were "[a]mong my contributions" suggesting that there are more contributions, but none are mentioned.  If those are the only two alleged contributions, the response should say so without such a qualification.  Finally, if there are no individuals with knowledge or documents demonstrating such facts, Plaintiffs should so state.

- Interrogatory No.8 seeks the basis for Plaintiffs' contention in paragraph 14 of the Complaint that the parties shared "profits and losses" from the batteries, and to identify with particularity the profits and losses shared, and all persons with knowledge and documents reflecting such facts.  Plaintiffs merely identified his own costs of "reselling" batteries without giving any details, figures, or how this constitutes sharing profits and losses of *Defendants'* business.  Finally, if there are no individuals with knowledge or documents demonstrating such facts, Plaintiffs should so state.

- Interrogatory No. 10 seeks the basis for Plaintiffs' contention that "Kauffman had no involvement in the creation of the SPEEDCELL mark."  Plaintiffs do not

respond to the portion of the interrogatory requesting identification of any documents reflecting this contention.   To the extent Plaintiffs have no documentary evidence, they should be compelled to say so.  Otherwise, Plaintiffs must be compelled to provide a full and complete response, including identification of the documents.

- Interrogatory No. 12 seeks the basis for Plaintiffs' contention that Kauffman allegedly relinquished or abandoned his business.   Again, Plaintiffs do not respond to the portion of the interrogatory requesting identification of any documents reflecting this contention.   To the extent Plaintiffs have no documentary evidence, they should be compelled to say so.  Otherwise, Plaintiffs must be compelled to provide a full and complete response, including identification of the documents.

- Interrogatory No. 18 seeks information on the relationship between Plaintiffs and Orient Express, including any agreements with, and financial terms between, the entities.   Orient Express appears to have marketed and sold batteries from Plaintiffs with Defendants' SPEEDCELL name and logo.   Plaintiffs merely state that "Orient Express is a customer of Full Spectrum Power" and that there might be a "dealer agreement" without any description of the financial terms of the arrangement.   This relationship was active at the time this lawsuit was filed, yet Plaintiffs have not identified a single term of the arrangement.

- Interrogatory No. 20 seeks information on Plaintiffs sale of batteries using Defendants' SPEEDCELL name and logo since January 1, 2009.   Although Plaintiffs produced a spreadsheet containing alleged sales of batteries, the last battery sale listed was on January 23, 2010.   This gives rise to two concerns. First, all subsequent sales are not listed.   Second, and perhaps more troubling, if Plaintiffs are excluding sales of other Full Spectrum Power batteries not named "Speedcell" but marketed with literature using the "Speedcell" name (e.g. "the legacy of Speedcell" or "the evolution of Speedcell"), those sales were also made off of the back of the Defendants' name and reputation in the industry. Defendants are aware that Plaintiffs were using such marketing descriptions for other Full Spectrum Power batteries since the lawsuit was filed and indeed within the last few weeks.  One such statement ("the legacy of Speedcell") was brazenly *added* to Plaintiffs' website *after* defense counsel had received assurances in July 2010 from Plaintiffs' counsel (Mr. Lee Berlik) that such use of Speedcell would stop altogether.   Without the sales data for all battery sales by Plaintiffs, Defendants could not determine for their claims the extent to which Plaintiffs made money from vendors and customers stolen from Defendants by among other things use of the "Speedcell" name and the total amount of Defendants' damages.

- Interrogatory No. 22 seeks the basis for Plaintiffs' contention in paragraph 22 of the Complaint that Defendants failed to meet orders and Plaintiffs convinced customers to remain customers.  Plaintiffs make statements in their answer about "online complaints" and "forum threads" but fails to identify them or produce them in their document production.  Moreover, Plaintiffs do not identify whether

there are documents demonstrating the other late order issues for KWS, Speedwerks, Orient Express, and Kyle Racing and who at those companies have knowledge of such facts.  If there are no individuals with knowledge or documents demonstrating such facts, Plaintiffs should so state.

- <u>Interrogatory No. 23</u> seeks information about the education, training, and other experience Mr. Levitt has had with "manufacturing batteries prior to January 1, 2009" and to identify persons with knowledge with their contact information and any related documents.  Plaintiffs identified a "Technical Careers Institute" with no contact information.  There is also no contact information identified for Lee's Cycle Center and the Fun Bike Center in San Diego and how that jobs related to the manufacture of batteries.

- <u>Interrogatory No. 26 (and Document Request No. 29)</u> seeks information on Plaintiffs' damages, and Plaintiffs do not itemize their damages.  If the Plaintiffs do not itemize their alleged damages, the claims should be stricken.

Without full and complete responses on these issues, Defendants' preparation for deposition and trial will be compromised.

## **CONCLUSION**

For all the foregoing reasons, this Court should grant Defendants' Motion to Compel, award Defendants their attorneys' fees and costs incurred in pursuing this motion, and grant such further relief as this Court deems just.


Dated:  August 30, 2010                     JOSHUA KAUFFMAN and NAVITUS LLC
                                            By counsel


                                            /s/ Attison L. Barnes, III _____
                                            Attison L. Barnes, III (VA Bar No. 30458)
                                            WILEY REIN LLP
                                            1776 K Street, N.W.
                                            Washington, DC  20006
                                            Telephone:  (202) 719-7000
                                            Fax: (202) 719-7049
                                            abarnes@wileyrein.com
                                            *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Attison L. Barnes, III, hereby certify that on August 30, 2010, I caused a copy of the

foregoing to be served via the clerk of the court's CM/ECF system to:

> Stephen A. Horvath
> Trichilo, Bancroft, McGavin, Horvath & Judkins, PC
> 3920 University Drive
> Fairfax, VA  22030
> Phone: (703) 385-1000
> Facsimile: (703) 385-1555

> /s/ Attison L. Barnes, III _____
> Attison L. Barnes, III (VA Bar No. 30458)
> WILEY REIN LLP
> 1776 K Street, N.W.
> Washington, DC  20006
> Telephone:  (202) 719-7000
> Fax: (202) 719-7049
> abarnes@wileyrein.com
> *Counsel for Defendants*

13181984.1